UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DILLON BURNETT,
an individual,

        Plaintiff,                  Case No. 1:19-cv-257
                                      HON. JANET T. NEFF and
                                      MAG. JUDGE SALLY J. BERENS

vs.

JOSH GRIFFITH, individually,

        Defendant.

_____

| | |
|---|---|
| William F. Piper (P38636) | Michael S. Bogren (P34835) |
| William F. Piper, P.L.C. | Plunkett Cooney |
| **Attorney for Plaintiff** | **Attorneys for Defendant** |
| 1611 W. Centre Ave., Ste 209 | 950 Trade Centre Way, Suite 310 |
| Portage, MI 49024 | Kalamazoo, Michigan 49002 |
| Phone: (269) 321-5008 | Tel: 269-226-8822 |
| Fax: (269) 321-5009 | mbogren@plunkettcooney.com |
| E-mail: wpiper@wpiperlaw.com | |

_____


**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT</u>**

**<u>ORAL ARGUMENT REQUESTED</u>**

**TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION AND COUNTER STATEMENT OF FACTS .......................................1

II.    STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT ....................... 3

III.   LAW AND ARGUMENT

      A.     STANDARDS APPLICABLE TO EIGHTH AMENDMENT CRUEL
           AND UNUSUAL PUNISHMENT CLAIMS..................................................................... 3

      B.     A REASONABLE JURY COULD DETERMINE THAT BOTH THE
           SUBJECTIVE AND OBJECTIVE ELEMENTS OF THE EIGHTH AMENDMENT
           STANDARD FOR CRUEL AND UNUSUAL PUNISHMENT EXISTED.................4

      C.     THE DEFENDANT GRIFFITH IS NOT ENTITLED TO QUALIFIED
           IMMUNITY........................................................................................................ 8

      C.     THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT
           ON MR. BURNETT'S STATE LAW ASSAULT AND BATTERY
           CLAIM ............................................................................................................... 11

IV.    RELIEF REQUESTED ..................................................................................... 12

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Case Citations**</u>:

*Anderson v. Creighton,*
483 U.S. 635, 641; 107 S. Ct. 3034; 97 L.Ed.2d 523 (1987)...............................................8, 10

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ........................................................................10

*Bennett v. Krakowski*, 671 F.3d 553 (6th Cir. 2011) ................................................................7

*Birch v. Cuyahoga County Probate Court,*
392 F. 3d 151, 157 (6th Cir. 2004) ............................................................................................3

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*)
(quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))..............................................................10

*Burgess v. Fischer*
735 F.3d 462, 474–75 (6th Cir. 2013) .......................................................................................7

*Cordell v. McKinney*, 759 F. 3d. 373 (6th Cir. 2014) ...................................................4, 6, 7, 11

*Danese v.Asman,*
875 F.2d 1239, 1242 (6th Cir. 1988), citing  *Anderson*
*v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).....................................10

*Dugan v. Brooks*, 818 F. 2d 513, 516-17 (6th Cir. 1987) .........................................................7

*Estate of Carter v. City of Detroit,*
80 F.3d 305, 310 (6th Cir. 2005) ..............................................................................................9

*Feathers v. Aey,*
319 F.3d 843, 848 (6th Cir. 2003) .............................................................................................9

*Gardenhire v. Schubert,*
205 F.3d 303, 311 (6th Cir. 2000) ...........................................................................................10

*Griffin v. Hardrick*, 604 F. 3d 649 (6th Cir. 2010) ...................................................................11

*Henry v. Metropolitan Sew. Dist.,*
922 F. 2d 332, 339 (6th Cir. 1990) quoting ...............................................................................8

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727,
2735; 73 L.Ed.2d 396 (1982).................................................................................................8, 10

*Hudson v. McMillian,*
503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ........................................................4, 7

*Malley v. Briggs,*
475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ........................................................8, 10

*Matsushita Electric Industry Co. v. Zenith Radio Corp.,*
475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) ....................................................3

*McDowell v. Rogers*
863 F.2d 1302, 1307 (6th Cir. 1988) ......................................................................................7

*Mullenix v. Luna,*
577 U.S. ____, 136 S.Ct. 305, 307, 308, 193 L.Ed.2d 255 (2015) ........................................10

*Myers v. Potter,*
422 F.3d 347 (6th Cir. 2005) ...............................................................................................10

*Odom v. Wayne County,* 482 Mich 458 (2008) .....................................................................12

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009)
(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)) ...................................................10

*Phelps v. Coy,* 286 F. 3d 295, 302 (6th Cir. 2002) ...............................................................7

*Ramirez v. Martinez,*
716 F.3d 369, 377-379 (5th Cir. 2013) ................................................................................7

*Reichle v. Howards,* 566 U.S. ___, ___ (2012) ...................................................................10

*Saucier v. Katz,*
533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) ...................................................8, 10

*Schreiber v. Moe*
596 F.3d 323, 332 (6th Cir. 2010) .........................................................................................7

*Smith v Stoneburner, 716 F.3ʳᵈ 926, 934 (2013)* ...............................................................8

*Solomon v Auburn Hills Police Department*
389 F.3d 167 (6th Cir. 2004) ................................................................................................7

*Sudol v. City of Hantramck,* 227 Mich App 455 (1997) .......................................................12

*Tinkler v. Richter,* 295 Mich 396 (1940) ............................................................................12

*Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1995)

(en banc) citing *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996) ........................9

*Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d. 251 (1986) ...........................4

## <u>Court Rules and Statutes</u>:

42 U.S.C. §1983  .....................................................................................................1,7

Fed. R. Civ. P. 56(c) ..................................................................................................4
Fed. R. Civ. P. 56 (f)(1) ...........................................................................................26

Fourth Amendment of the
Constitution of the United States .............................................................................8

Eighth Amendment of the
Constitution of the United States ........................................................................4, 11

M. Civ. J.I. 115.01 ...................................................................................................12
M. Civ. J.I. 115.02 ...................................................................................................12

# I.   INTRODUCTION AND STATEMENT OF FACTS

The plaintiff Dillion Burnett claims that the defendant used excessive and cruel and unusual force against him on January 12, 2018 while he was handcuffed in the Van Buren County Jail, resulting in a brain injury and continuing physical and emotional problems.    He brings these claims under 42 U.S.C. § 1983.    He also brings a state law intentional tort claim of assault and battery.

On January 12, 2018 Mr. Burnett was arrested on a warrant for failure to appear at a work crew.    Van Buren County Sheriff's Deputy Dan Perkins brought Mr. Burnett to the Van Buren County Jail for booking.    The defendant Josh Griffith, who was and is a Van Buren County Corrections sergeant, then took custody of Mr. Burnett, whom he did not know (**Burnett dep, at pp. 6-10; Griffith dep, at pp. 6-19**).

Sergeant Griffith then did the video arraignment of Mr. Burnett in front of Judge McKay.    During the arraignment, Mr. Burnett became angry.    Judge McKay asked Mr. Burnett what Mr. Burnett had said under his breath.    Mr. Burnett told him.    Then Judge McKay sentenced Mr. Burnett to 93 days in jail for criminal contempt of court (**Burnett dep, at pp. 8-9, 26-28, 32; Griffith dep, at pp. 15-20**).

After Mr. Burnett had been arraigned by video, Sergeant Griffith handcuffed Mr. Burnett to a steel picnic bench in the booking area.    Mr. Burnett then somehow moved the handcuffs from the back of his body to the front of his body.    Sergeant Griffith then handcuffed each of Mr. Burnett's outstretched hands to opposite sides of the steel picnic table bench (**Griffith dep, at pp. 6-22, 26-28**).

Because of the way Mr. Burnett had been acting Sergeant Griffith asked Ann Niemi of the Van Buren County Community Mental Health Department to do a mental health

1

assessment of Mr. Burnett.    After seeing Mr. Burnett, Ms. Niemi advised that Mr. Burnett be put on suicide watch.    So Sergeant Griffith put him in a different room and had Mr. Burnett put on a gown. (**Burnett dep, at pp. 10-11; Griffith dep, at pp. 28-31**).    However, the gown had Velcro that didn't fasten on one side, which exposed his penis.    Mr. Burnett complained about that to Sergeant Griffith and Officer Tessar (**Burnett dep, at pp. 11-17; Griffith dep, at pp. 52-54; Exhibit 1**).

What happened next, which is captured on video, which the defendant attached as Exhibit B to its brief, is that Mr. Burnett, while handcuffed with his hands behind his back, walked away to the right, as Officer Tessar was holding open the door to another area behind him.    Sergeant Griffith, a former football player who was then 5'11" inches tall and 260 lbs. then, without giving Mr. Burnett any commands or asking Officer Tessar for assistance, lifted Mr. Burnett up, swung him from right to left, and slammed Mr. Burnett violently onto the floor headfirst.    Mr. Burnett began immediately to bleed from the head.    Mr. Burnett could not remember anything about the injury, having briefly lost consciousness (**Burnett dep, at pp. 16-19; Griffith dep, at pp. 8-10, 34-40, 50-57; Exhibit 2; Defendant's Exhibit B**).

The defendant Griffith claims that Mr. Burnett, after he had "placed" him on the floor, was kicking his legs and would not hold still.    Officer Tessar applied paper towels to a laceration that was approximately 1 ½ to 2 inches long on Mr. Burnett's left forehead until a nurse appeared six minutes later (**Griffith dep, at pp. 42-49, 55-60; Exhibit 1; Exhibit 2; Exhibit 3**).    The videotape is unclear about whether Mr. Burnett was moving on the floor.

What Mr. Burnett recalls then is waking up and seeing numerous officers around him, with blood coming from his head (**Burnett dep, at pp. 19-21**).    Mr. Burnett reported that his head and neck hurt and that he had numbness on his face (**Griffith dep, at pp. 42-52;**

2

**Exhibit 4**).   His injuries were visible several days later (**Exhibit 5; Affidavit of Sherry Nondorf**).

After receiving treatment from the nurse, Mr. Burnett was transported to Lakeland Hospital.   After he received three stitches to close his laceration, he was taken back to the jail and put on suicide watch (**Burnett dep, at pp. 16-17**).

After the incident Mr. Burnett has had migraine headaches on the left side of his head that have become progressively more severe.   He has had lower back pain.   He has had personality changes, and, he believes, PTSD (**Burnett dep, at pp. 30-54**).

Mr. Burnett thereafter brings this lawsuit.

## II.    STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   We, "must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party," *Birch v. Cuyahoga County Probate Court*, 392 F. 3d 151, 157 (6th Cir. 2004), but we will uphold a grant of summary judgment "[w]here the record as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Electric Industry Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

## III.   LAW AND ARGUMENT

### A.    STANDARDS APPLICABLE TO EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT CLAIMS

The plaintiff agrees with the defendant that the Eighth Amendment's cruel and unusual punishment standard applies to Mr. Burnett's claim, because Judge McKay had already sentenced Mr. Burnett to 93 days in jail for criminal contempt when the forcible takedown occurred.

The legal standard for cruel and unusual punishment claims is set forth in *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d. 251 (1986).  Liability of an officer depends on whether the force he used against a prisoner resulted from a good faith effort to restore discipline or maliciously and sadistically to cause harm.  There are four factors to analyze to determine whether an officer acted maliciously and sadistically to cause harm.  They are:  1) the need for the application of  force;  2)  the relationship between the need for force and the amount of the force used and the extent of the injury inflicted;  3)  the threat reasonably perceived; and 4) any efforts made to temper the severity of the forceful response.  Furthermore, the <u>pain</u> must be unnecessary and sufficiently serious to be contrary to contemporary standards of decency.  The standard therefore has subjective and objective elements.  *Cordell v. McKinney*, 759 F. 3d. 373 (6th Cir. 2014).

It is also true that a serious injury is not required for liability.  And there is no "*de minimus*" exception to the standard.  Of course, the extent of the injury could have some bearing on whether the subjective and objective elements have been met.  *Hudson v McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d. 156 (1992).

**B.**   <u>**A REASONABLE JURY COULD DETERMINE THAT BOTH THE SUBJECTIVE AND**</u>
<u>**OBJECTIVE ELEMENTS OF THE EIGHTH AMENDMENT STANDARD FOR CRUEL AND**</u>
<u>**UNUSUAL PUNISHMENT EXISTED**</u>

This case is really controlled by *Cordell v. McKinney*, 759 F. 3d. 373 (6th Cir. 2014), which the defendant tellingly did not cite in its brief, which also curiously lacks on index.  In that case the facts were that Mr. Cordell, who was a convicted prisoner, requested a haircut.  In response

to something Deputy McKinney had said Mr. Cordell swore at him.   The deputy put Mr. Cordell

in handcuffs to take him to a holding cell after two other deputies had arrived.   Deputy McKinney

escorted Mr. Cordell, who was handcuffed behind his back, down a hallway with other deputies

present.   Deputy McKinney then rammed Mr. Cordell's head against a wall, causing him a

laceration from his head that bled onto a wall, requiring stitches to close it.   After Mr. Cordell

sued, the district court granted summary judgment to the defendants.   Mr. Cordell appealed, and

the Sixth Circuit court reversed.

In its opinion, in evaluating the subjective component, the court noted that Mr. Cordell had

either tensed up and turned into Deputy McKinney, or he had at least turned and attempted to face

him.   So the court concluded that Deputy McKinney had a basis for using some force against Mr.

Cordell.   Analyzing further, however, the court concluded that Deputy McKinney lacked a good

faith reason to use Mr. Cordell as a human battering ram.   The court noted that Deputy

McKinney's force resulted in a laceration on Mr. Cordell's head   that caused his blood to go onto

the wall and needed five stiches to close.   Furthermore, there were other deputies around, and Mr.

Cordell was handcuffed and not a threat, even though Mr. Cordell had turned.   There was no

evidence, moreover, that Deputy McKinney had attempted to moderate the force he used.

Therefore, the court concluded that a reasonable jury could conclude that Deputy McKinney's

action of ramming or slamming Mr. Cordell headfirst against a wall evidenced a malicious intent

to injure.

Likewise, in this case, that Mr. Burnett attempted to walk away from Sergeant Griffith

without breaking away gave him a plausible need to use some force to restrain him.   However,

there was no justification to react by flinging the handcuffed Mr. Burnett from right to left and

slamming him headfirst onto the floor, bursting open a large laceration on his left forehead, and

knocking him unconscious.   Deputy Griffith, again, was 5'11" and 260 lbs.   Mr. Burnett, as the video shows, was slightly built.   Because Mr. Burnett's hands were handcuffed behind his back, not only was he no threat to Sergeant Griffith, but also he could not break his fall or prevent his head from contacting the floor.   Sergeant Griffith's conduct therefore evidenced malicious intent. The severity of Mr. Burnett's injuries likewise support this conclusion.   Mr. Burnett immediately bled out from his head wound, and there was a pool of blood beside Mr. Burnett's head on the floor.   He had a 1 ½ to 2 inch laceration on his head that required stitches to close.   Photos certainly look like he suffered a severe injury.   And Mr. Burnett lost consciousness and afterwards suffered lingering migraine headaches.

Similar to the facts in *Cordell v. McKinney*, there were no facts in this case   that indicate that Sergeant Griffith attempted to moderate the force he used against Mr. Burnett.   Sergeant Griffith gave Mr. Burnett no commands before taking him down. He did not call for backup, even though Officer Tessar was in the room.   He just immediately took the defenseless Mr. Burnett down violently and excessively, apparently because he could.

Sergeant Griffith's lack of truthfulness also reveals to his malicious intent.   The videotape reveals that Mr. Burnett never broke free from Sergeant Griffith.   In his report, Sergeant Griffith wrote ". .. subject's head struck the floor when placed on the floor" (**Exhibit 4**).   He also stated, "I attempted to grab subject's arm tight in order to regain control.   I then placed subject on the floor in order to find other restraining options.   Officer Tessar and I held inmate on the floor" (**Exhibit 4**).   Sergeant Griffith did not "place" Mr. Burnett on the floor, like placing dishes on a dinner table to set it.   Placing him on the floor would not have resulted in a serious head injury that immediately bled out.   He slammed Mr. Burnett's headfirst onto the floor.

Mr. Burnett engaged in activities before the incident that one can infer had angered

Sergeant Griffith.   He swore at or disrespected the Judge, resulting in 93 day contempt sentence. He loosened the handcuffs and moved them from behind to the front of him.   Sergeant Griffith responded to that by handcuffing each of Mr. Burnett's hands to opposite sides of the picnic bench. Given how Sergeant Griffith responded to Mr. Burnett walking away from him, one can infer, similar to the inference made by the court in *Cordell v. McKinney,* in analyzing the facts of that case, that Sergeant Griffith had acted maliciously towards Mr. Burnett.

The court in *Cordell v. McKinney* also analyzed the objective element of the cruel and unusual punishment test.   The court concluded that a reasonable jury could conclude that Deputy McKinney's use of force was an unnecessary and disproportionate response that was, "repugnant to the evolving standards of decency that mark the progress of a maturing society", citing *Hudson v. McMillian,* 503 U.S., at 10.   It noted Mr. Cordell's significant injuries,   and it asserted that the district court had erred in rejecting Mr. Cordell's characterization of his injuries.   It also noted numerous cases wherein courts have condemned the slamming of the head of a handcuffed, restrained subject against a hard object.   See *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010); *Burgess v. Fischer*, 735 F.3d 462, 474–75 (6th Cir. 2013); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988*); Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002).   It concluded that, ". . . we doubt that slamming a handcuffed and controlled prisoner headfirst into a concrete wall comports with human decency."

The court should also be aware of *Ramirez v. Martinez*, 716 F.3d 369, 377-379 (5th Cir. 2013).   In that case the court ruled that pulling away form the officer was not sufficient resistance itself to constitute an immediate threat to the safety of the officer to justify the force used.   See also *Bennett v. Krakowski*, 671 F.3d 553 (6th Cir. 2011).   See further *Solomon v Auburn Hills Police Department*, 389 F.3d 167 (6th Cir. 2004), *Dugan v. Brooks*, 818 F. 2d 513, 516-17 (6th

Cir. 1987); and *Smith v Stoneburner*, *716 F.3ʳᵈ 926, 934 (2013)*.

Likewise, slamming a handcuffed and restrained Mr. Burnett headfirst onto a hard tile floor, causing him immediately to bleed out, and causing a laceration of 1½ to 2 inches that required three stitches to close, and lingering migraine headaches, was not objectively necessary or reasonable.   One could conclude that Mr. Burnett suffered severe pain that, objectively, violated contemporary standards of human decency.

C.    **THE DEFENDANT GRIFFITH IS NOT ENTITLED TO QUALIFIED IMMUNITY**

The defendant has also asserted the defense of qualified immunity.   "The doctrine of qualified community affords protection against individual liability to officials as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Henry v. Metropolitan Sew. Dist.,* 922 F. 2d 332, 339 (6th Cir. 1990) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2735; 73 L.Ed.2d 396 (1982). The law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [officer] possessed."   *Anderson v. Creighton*, 483 U.S. 635, 641; 107 S. Ct. 3034; 97 L.Ed.2d 523 (1987).   However, if an officer subjectively believed that he was acting lawfully, but the facts at his disposal did not warrant such a conclusion, he will not be protected.   The defense does not protect the acts of an incompetent, corrupt or dishonest officer.   *Anderson v. Creighton, supra*; *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court addressed the qualified immunity inquiry in the context of a Fourth Amendment claim.   The court stated that reviewing courts must first address whether, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

constitutional right."  *Id.* at 201, 121 S. Ct. at 2156.   If the answer to the first inquiry is yes, the

next inquiry is whether the right was clearly established, an "inquiry ... [that] must be undertaken

in light of the specific context of the case, not as a broad general proposition."  *Id.*   "The relevant,

dispositive inquiry in determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted ... If the

law did not put a reasonable officer on notice that his conduct would be clearly unlawful, summary

judgment based on qualified immunity is appropriate."  *Id.,* at 202, 121 S. Ct. at 2156-57.

      The Sixth Circuit has synthesized the qualified immunity three part inquiry as

follows in *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003):

> Qualified immunity involves a three step inquiry. First, we
> determine whether, based upon the applicable law, the facts
> reviewed in the light most favorable to the plaintiffs show
> that a constitutional violation has occurred. Second, we
> consider whether the violation involved a clearly established
> constitutional right of which a reasonable person would have
> known. Third, we determine whether the plaintiff has offered
> sufficient evidence to indicate that what the official allegedly
> did was objectively reasonable in light of the "clearly
> established constitutional rights" *Williams v. Mehra,* 186 F.3d
> 685, 691 (6th Cir. 1995) (en banc) citing   *Dickerson v.*
> *McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996).

      Some courts in the Sixth Circuit simplify the qualified immunity inquiry into two steps,

viz.: (1) whether, considering the allegations in a light most favorable for the party injured, a

constitutional right has been violated; and (2) whether the right has been clearly established. *Estate*

*of Carter v. City of Detroit,* 480 F.3d 305, 310 (6th Cir. 2005). These courts have noted that, "in

many factual contexts, the fact that a right is 'clearly established' sufficiently implies that its

violation is objectively unreasonable" *Id*., at p. 31, at n.2 See also *Myers v. Potter,* 422 F.*3*d 347

*(*6th Cir. 2005).

      To be clearly established it is clear that the officer's conduct does not have to be identical

to conduct   previously held unconstitutional in order to overcome qualified immunity.   The

requirement does mean*,* though, that "...in light of the preexisting law, the illegality must be

apparent." *Danese v.Asman,* 875 F.2d 1239, 1242 (6th Cir. 1988), citing  *Anderson v. Creighton*,

483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).   With respect to this inquiry, courts in the

Sixth Circuit look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit

and other courts within the Sixth Circuit, and finally to decisions of other circuits.   *Gardenhire v.*

*Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

In *Mullenix v. Luna*, 577 U.S. ____, 136 S.Ct. 305, 307, 308, 193 L.Ed.2d 255 (2015),

the court summarized the qualified immunity analysis as follows:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. ___, ___ (2012) (slip op., at 5) (internal quotation marks and alteration omitted).   "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).   Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.LS. 335, 341 (1986).
>
> "We have repeatedly told courts . . . not to define clearly established law at a high level of generality."  *Al-Kidd, supra,* at 742.   The dispositive question is "whether the violative nature of *particular* conduct is clearly established."  *Ibid.*   (emphasis added).   This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The defendant in its brief asserted as follows:

> Here, the *Griffith* decision is factually very similar to this case. In order to avoid immunity plaintiff must come forward with a case that is factually **more similar** than Griffith and that holds a similar use of force was unconstitutional under the Eighth Amendment. The defendant suggests such a case does not exist.

**Defendant's Brief in Support of Motion for Summary Judgment, RE 32, at p. 13, Page ID #72**.

The plaintiff, contrary to the defendant's assertion, has such a case- the aforementioned *Cordell v. McKinney, supra.* In that case the court concluded that, "under this standard, as discussed above, we conclude that any reasonable official would know that ramming a handcuffed prisoner headfirst into a concrete wall is an unreasonable method of regaining control of a prisoner in a hallway occupied only by other jail officials." Likewise, based on *Cordell v. McKinney*, Sergeant Griffith should have known that slamming a handcuffed and restrained smaller man headfirst onto a hard tile floor in the presence of another corrections officer is an unreasonable method of regaining control of a prisoner. Substituting a hard tile floor for a hard concrete wall shouldn't make any substantive legal difference. In fact, it likely takes more force to fling and slam someone headfirst onto a floor then to push and ram someone headfirst into a wall.

It is telling and revealing, again, that the defendant did not cite the very factually similar *Cordell v. McKinney* in its brief. Instead, it relied on *Griffin v. Hardrick*, 604 F. 3d 649 (6th Cir. 2010). That case involved a leg sweep takedown maneuver in which the prisoner broke his leg when the officer obviously accidentally fell onto it. That case is clearly factually dissimilar, inapposite and unconvincing.

## D.   THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON MR. BURNETT'S STATE LAW ASSAULT AND BATTERY CLAIMS.

Mr. Burnett has also sued the defendants for assault and battery under state law.

11

An assault is any intentional, unlawful threat or offer to do bodily harm to another by force under circumstances that create a well-founded fear of imminent peril, coupled with the apparent ability to carry out the act if not prevented.   A battery is the willful or intentional touching of a person against that person's will.  *Tinkler v. Richter*, 295 Mich 396 (1940); M. Civ. J.I. 115.01; M. Civ. J.I. 115.02.

An individual defendant officer is not protected by the state law doctrine of governmental immunity for conduct that he had committed that was not objectively reasonable within the scope of his authority and with malice.  *Odom v. Wayne County*, 482 Mich 458 (2008); *Sudol v. City of Hantramck*, 227 Mich App 455 (1997).

In this case malice can be inferred from the pure excessiveness of the force, as well as the precipitous nature of it, given the lack of threat the unarmed, handcuffed, and slightly-built Mr. Burnett posed to the defendant in the controlled booking area in which there was at least one other officer present.

## IV.   RELIEF REQUESTED

For all of the above reasons, the plaintiff Dillion Burnett requests that this court deny the defendant's motion for summary judgment.

Dated: June 23, 2020                     William F. Piper, PLC.
                                         Attorney for Plaintiff


                          By:    /s/ William F.   Piper
                                     William F. Piper (P38636)
                                 BUSINESS ADDRESS:
                                     1611 W. Centre Ave., Suite 209
                                     Portage, MI 49024
                                     (269) 321-5008

12

## <u>CERTIFICATE OF COMPLIANCE WITH L. CIV. R. 7.2(b)(i)</u>

I certify that this brief conforms to the requirements of W.D. L. Civ. R. 7.2(b)(i).   The length of this brief is 3,846 words.   It was prepared using Microsoft Word.   The word count does not include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits or affidavits.

Dated: June 23, 2020                                          WILLIAM F. PIPER, PLC.
                                                                             Attorney for Plaintiff

                                                                   By:      /s/ William F. Piper
                                                                             William F. Piper (P38636