UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DILLON BURNETT,
an individual,

       Plaintiff,                        Case No. 1:19-cv-257
                                                  HON. HALA Y. JARBOU and
                                                  MAG. JUDGE SALLY J. BERENS

vs.

JOSH GRIFFITH, individually,

       Defendant.

William F. Piper (P38636)                    Michael S. Bogren (P34835)
William F. Piper, P.L.C.                      Plunkett Cooney
**Attorney for Plaintiff**                      **Attorneys for Defendant**
1611 W. Centre Ave., Ste 209           950 Trade Centre Way, Suite 310
Portage, MI 49024                            Kalamazoo, Michigan 49002
Phone: (269) 321-5008                     Tel: 269-226-8822
Fax: (269) 321-5009                        mbogren@plunkettcooney.com
E-mail: wpiper@wpiperlaw.com

## **PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff Dillion Burnett objects the portion of the Magistrate Judge's Report and Recommendation wherein it held that there was no jury submissible evidence that the defendant had maliciously and sadistically intended to harm him. Plaintiff also objects to the Magistrate Judge's similar conclusions regarding his state law assault and battery claim.

In *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d. 251 (1986), the Supreme Court indicated, regarding whether a corrections officer had the requisite culpable state of mind, that courts should consider "such factors as the need for the application of force, the relationship

1

between the need and the amount of force that was used, [and] the extent of the injury inflicted", as well as "the extent of the treat of the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of the forceful response." (Internal quotation marks omitted; alteration in original). The Magistrate Judge's Report and Recommendation doesn't pass this analysis.

Regarding all of these factors, evidence of Sergeant Griffith's malicious intent clearly exists in this case. Mr. Burnett attempted to walk away from Sergeant Griffith, but while handcuffed, and without breaking away, which gave Sergeant Griffith a plausible need to use some minimal force to restrain him. However, there was no justification for him to react by flinging the handcuffed Mr. Burnett from right to left and slamming him headfirst onto the floor, which burst open a large laceration on his left forehead and knocked him unconscious. Deputy Griffith, again, was 5'11" and 260 lbs. Mr. Burnett, as the video shows, was slightly built. Because Mr. Burnett's hands were handcuffed behind his back, not only was he no threat to Sergeant Griffith, but also he could not break his fall or prevent his head from contacting the floor. Sergeant Griffith's conduct therefore evinced malicious intent. The severity of Mr. Burnett's injuries likewise support this conclusion. Mr. Burnett immediately bled out from his head wound, and there was a pool of blood beside Mr. Burnett's head on the floor. He had a 1 ½ to 2 inch laceration on his head that required stitches to close. Photos certainly look like he suffered a severe injury. And Mr. Burnett lost consciousness and afterwards suffered lingering migraine headaches.

Similar to this *Cordell v. McKinney*, 759 F. 3d 373 (6th Cir. 2014), there were no facts in this case that indicated that Sergeant Griffith had attempted to moderate the force he had used against Mr. Burnett. Sergeant Griffith gave Mr. Burnett no commands before taking him down. He did not call for backup, even though Officer Tessar was in the room. He just immediately

took the defenseless Mr. Burnett down violently and excessively, apparently because he could.

Officer Griffith's lack of truthfulness is also relevant to the issue of intent. The magistrate judge stated that that Sergeant Griffith in his report had stated that he had placed Mr. Burnett on the ground was not inaccurate and was not evidence of his frame of mind at the time of the incident. (**Report and Recommendation, RE 39, at p 11, Page ID # 210**). Plaintiff respectfully disagrees. Although one could strain to conclude that the word "placed" was not inaccurate, in the sense that one could violently place someone on the ground, it was certainly misleading. The word "placed", in that context, implies that his conduct in that regard was soft and gentle, as if he were placing dishes on a table. And that Sergeant Griffith indicated in his report that he had "placed" Mr. Burnett on the ground, without describing, in any way, the violent method in which he had done so, suggests a consciousness of guilt and a coverup of his conduct. One can infer from this misleading description his maliciousness and resentment towards Mr. Burnett. Plaintiff, contrary to the Magistrate Judge's Report and Recommendation, was not arguing that Officer Griffith had to write the particular word "slammed" in his report.

The Magistrate Judge also stated that, "Moreover, Griffith was fully aware that security cameras recorded activity in the booking room" (**Report and Recommendation, RE 37, at pp 11-12, Page ID $210-211**), as if this meant that Sergeant Griffith couldn't possibly have created a false police report by writing "placed" in his report because he that knew he was being videotaped. But this conclusion is illogical. One doesn't have to go beyond pop culture knowledge, i.e., the George Floyd incident in Minnesota, to realize that officers can prepare false police reports despite their specific knowledge that they are being videotaped.

The videotape does not depict that Mr. Burnett was struggling on the ground, contrary to the Magistrate Judge's Report and Recommendation. As plaintiff argued in his brief, he was

knocked unconscious. There was at least a question of fact on this.

Many cases have found maliciousness where the force used by an officer was clearly unjustified, even if the prisoner's conduct wasn't perfect. *Lewis v. Downey*, 581 F.3d 467, (7th Cir. 2009); *Thompson v. Virginia*, 878 F.3d 89 (4th Cir. 2017); T*reats v. Morgan*, 308 F. 3d. 868, 873 (8th Cir. 2002); *Lawrence v. Bowersox*, 297 F. 3d. 727 (8th Cir. 2002); *Hickey v. Reeder*, 12 F. 3d. 754 (8th Cir. 1993).

As the plaintiff argued in his brief, this case should have been controlled by *Cordell v. McKinney*, 759 F. 3d 373 (6th Cir. 2014). Although no two cases are alike, that case was so substantially similar and analogous that it should have controlled the outcome herein.

For the reasons explained above, and in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, the plaintiff also established a jury submissible case that the defendant acted with malice regarding his state law assault and battery claim as well.

For all of the above reasons, in addition to the reasons set forth in Plaintiff Brief in Opposition to Defendant's Motion for Summary Judgment, the Plaintiff requests that this court reject the Magistrate Judge's Report and Recommendation and reinstate the case for further proceedings, including a trial, if necessary.

Dated: December 21, 2020	William F. Piper, PLC.
	Attorney for Plaintiff


	By:	/s/ William F. Piper
		William F. Piper (P38636)
	BUSINESS ADDRESS:
		1611 W. Centre Ave., Suite 209
		Portage, MI 49024
		(269) 321-5008

4

5

## CERTIFICATE OF COMPLIANCE WITH L. CIV. R. 7.2(b)(i)

I certify that this brief conforms to the requirements of W.D. L. Civ. R. 7.2(b)(i).  The length of this brief is 1,032 words.  It was prepared using Microsoft Word.  The word count does not include the case caption, cover sheets, the signature block or exhibits.

Dated: December 21, 2020  WILLIAM F. PIPER, PLC.
Attorney for Plaintiff

By:  /s/ William F. Piper
William F. Piper (P38636