UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DILLON BURNETT,

    Plaintiff,

v.

JOSH GRIFFITH,

    Defendant.
_____/

Case No. 1:19-cv-257

Honorable Hala Y. Jarbou

# ORDER

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Dillon Burnett claims Defendant Josh Griffith, a Van Buren County Corrections sergeant, used excessive force in restraining Burnett after he attempted to break free from Griffith's grasp. Burnett brings a federal claim, alleging a violation of the Eighth Amendment, and a state claim for assault and battery. Griffith moved for summary judgment (ECF No. 31), arguing that Burnett could not establish the elements required for each claim, and that he was nevertheless entitled to qualified immunity. The motion was referred to a magistrate judge. The magistrate judge issued a Report and Recommendation (R&R) recommending Griffith's motion be granted because there was insufficient evidence to demonstrate that "Griffith sought wantonly to inflict pain on Burnett." (R&R 11, ECF No. 39.) Having concluded that no reasonable juror could find Griffith liable, the R&R declined to analyze the issue of qualified immunity. (*Id.* at 12 n.4.) Before the Court are Burnett's objections to the R&R. (ECF No. 40.) The matter will be returned to the magistrate judge to determine the issue of qualified immunity.

### I. Background

On January 18, 2018, Burnett was booked into the Van Buren County Jail and arraigned by District Court Judge Michael McKay for failure to appear. (ECF No. 31-1, PageID.77.) Defendant Griffith booked Burnett. (ECF No. 32-3, PageID.90.) Burnett misbehaved during the arraignment and Judge McKay sentenced him to 93 days in jail for criminal contempt. (Arraignment Recording, ECF No. 32-2.)

Burnett was agitated following the hearing. He sat down against a wall and stated that if he found out that any officer had assaulted an inmate at the jail, he would assault that officer.[1] (Griffith Dep. 21, ECF No. 32-3.) Griffith subsequently cuffed Burnett's hands behind his back and secured the handcuffs to an eye bolt on a steel bench in the booking room. (*Id.* at 22.) Griffith went off to attend other matters, at which point Burnett managed to unscrew the eye bolt to free himself from the bench. (*See* Post-Arraignment Recording, ECF No. 32-2.) Three officers, including Griffith, took notice and approached Burnett as he was maneuvering to bring his still-cuffed hands to his front by pulling them under his legs. Burnett was re-cuffed, this time by handcuffing each hand to a different end of the bench. (*Id.*) Griffith was concerned that Burnett would be able to access inmate property being held in the booking room. (Griffith Dep. 41.)

Burnett then asked to speak to a mental health professional. (Burnett Dep. 10, ECF No. 32-1.) He spoke to Ann Niemi of the Van Buren County Community Mental Health Department. (*Id.*) She determined that Burnett needed to be placed on suicide watch. Burnett was thus required to change into a suicide gown. He refused at first, but then agreed to put on the gown. He complained to officers that his genitals were exposed because the gown's Velcro would not stay

---

[1] The record offers no indication for why Burnett said this. Contextually bizarre as the statement is, Burnett does not deny that he said it.

2

fastened.  With the suicide gown on, Burnett was ready to be escorted to a cell.  Griffith cuffed Burnett's hands behind his back.  (Griffith Dep. 31.)

Video footage captured the entire incident resulting in this lawsuit.  Officer Tessar moved ahead to open the door leading out of the booking room for Griffith, who was holding and walking with Burnett.  As they approached the door, Burnett suddenly pulled away to the right, toward the inmate property and bench where he was previously restrained.  (Booking Room Video, ECF No. 32-2.)  Griffith tried to regain control of Burnett, and a struggle ensued as each pulled in the opposite direction.  As Burnett continued to pull away, Griffith pulled Burnett across his body and took him to the floor.  Griffith knelt as he tried to restrain Burnett and Officer Tessar came to help.  The fall caused a laceration on Burnett's head and he briefly lost consciousness.  Griffith cleaned Burnett's forehead with paper towel, as his wound was bleeding.  A few minutes after the incident, a nurse arrived on scene and Burnett was taken to an emergency room.  He received three stitches.  Burnett also reported that his head and neck hurt, and that his face was numb.

## II. Standards

### A. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 289 (1961)).  In

considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### B. Objections to R&R

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

## III. Analysis

Plaintiff objects to two conclusions in the R&R: (1) that the incident footage is the only evidence speaking to Griffith's subjective intent, and (2) that based on the video, no reasonable juror could conclude that Griffith acted with the degree of malicious intent required for Burnett to win on either of his two claims. Because Plaintiff prevails on his second objection, which will cause the Court to return this matter to the magistrate judge, the first objection will not be analyzed.

### A. Eighth Amendment Claim

Because Burnett had just been sentenced to criminal contempt, the parties agree that the question of excessive force is governed by the Eighth Amendment. The Eighth Amendment forbids "gratuitous infliction of suffering" on prisoners. *Gregg v. Georgia*, 428 U.S. 153, 158 (1976). Proving an Eighth Amendment claim requires establishing an objective component and a subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). With respect to the subjective component, "whenever

4

guards use force to keep order," the standards explained in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" in *Whitley* is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Id.* "[T]he need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible official,' and 'any efforts made to temper the severity of a forceful response'" should all be considered when analyzing maliciousness. *Id.* (citing *Whitley*, 475 U.S. at 321).

Based on the footage of the incident, it is clear that some force was needed: Burnett tried to break free from Griffith as he was being escorted to his prison cell. In responding to Burnett's actions, Griffith used a good deal of force. He did so while Burnett was handcuffed and Officer Tessar was nearby and capable of helping – Griffith had less forceful alternatives. Although it is not the Court's job to second-guess an officer's actions in fast-developing situations, it is also not the Court's job to take on the role of the jury.

In Eighth Amendment cases, subjective intent can be inferred from context: what situation did an officer face, and did he respond with such unnecessary and disproportionate force as to constitute malice? Viewing the footage of the incident in question in the light most favorable to Burnett,[2] the Court cannot conclude that a reasonable jury would never find that Griffith acted with malice. Interpretation of the incident in question is a matter for the jury. A reasonable jury

---

[2] Where there is video completely depicting an incident of alleged excessive force, courts need not accept the non-moving party's version of events on summary judgment if it is totally contradicted by the available footage. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [courts] need not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* Plaintiff here does not present an unsupportable version of events. Unlike in *Scott*, the parties here do not present incompatible descriptions of the events in question. Rather, the parties dispute whether Griffith's actions depicted in the videotape suffice to infer malice.

considering all the evidence could infer that Griffith acted with the requisite intent.  Summary judgment should not be granted in favor of Defendant on this claim.

### B. Assault and Battery Claim

In Michigan, a government employee enjoys immunity from liability for intentional torts so long as they can show that: (1) the challenged actions were undertaken during the course of employment and they were acting, or reasonably believed they were acting, within the scope of their employment; (2) they performed the challenged act in good faith or without malice; and (3) the acts were discretionary, as opposed to ministerial.  *Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008).  Hence, a government employee *is* liable if they acted with "malicious intent." *Id.* at 482.

The R&R concluded that Burnett could not show Griffith acted with malicious intent for the same reasons he could not satisfy the subjective component of his Eighth Amendment claim. (R&R 13.)  For the reasons given in the previous section, summary judgment is not appropriate on Plaintiff's second claim.

### C. Qualified Immunity

Because the magistrate judge concluded that Burnett lacked sufficient evidence to establish his underlying claims, the R&R rightly declined to analyze the issue of qualified immunity raised by Griffith.  (R&R 12 n.4.)  Having determined that summary judgment is not warranted on the grounds given in the R&R, the Court will return the matter to the magistrate judge to resolve the issue of qualified immunity.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (ECF No. 39) is **REJECTED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (ECF No. 31) is **REMANDED** to the magistrate judge for a Report and Recommendation on the issue of qualified immunity.

Dated:   January 7, 2021                         /s/ Hala Y. Jarbou
                                                        HALA Y. JARBOU
                                                        UNITED STATES DISTRICT JUDGE